## PATRICK DUFFY et al.

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1902.*

1. CRIMINAL LAW—*what will not sustain conviction of crime of assault.* If the chief evidence tending ,to connect the defendants with the crime of assault is the unsupported testimony of the prosecuting witness that he identified them by their faces and voices, the conviction cannot be sustained where the defendants and four other witnesses testify to facts which prove an alibi.

2. SAME—*personal experience of judge in another case should not go against defendants.* In a trial for assault, where the evidence against the defendants is slight, it is not proper for the judge to put his personal experience in another case of assault into the scales against defendants, and to refuse to allow them to prove that the place where the alleged assault was committed was a public one and that there were persons within hearing and seeing distance.

*Duffy* v. *People*, 98 Ill. App. 34, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

CHARLES B. STAFFORD, for appellants.

H. J. HAMLIN, Attorney General, and CHARLES S. DENEEN, State's Attorney, (W. S. ELLIOTT, Jr., of counsel,) for the People.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellants, Patrick Duffy and John Keim, were indicted with one Ole Olson, in the criminal court of Cook county, for an alleged assault to commit bodily injury upon one Henry Hornburg. A jury was waived by the defendants, Duffy and Keim, and the issue submitted to the court. Olson was never arrested. The court found the appellants guilty and sentenced them to the county jail, each for the term of ninety days and to pay a fine

of $50 and costs. Appellants appealed to the Appellate Court. There the judgment was affirmed, and the defendants, Duffy and Keim, bring the record to this court for review.

It is urged that the finding is not justified by the evidence. The testimony of the complaining witness, Hornburg, is, that he was proceeding homeward upon a South Halsted street car on the evening of December 13, 1899; that as he was about to alight therefrom near Thirtyfirst street, Keim, coming from behind, pushed him from the car, jumped after him and seized him, and that while Keim was thus holding him, the defendant Duffy came up, and he, together with Keim, assaulted the prosecuting witness by striking him upon the head with some blunt instrument; that during this time Olson was standing near and encouraging them in their acts. Hornburg testifies that during this scuffle he was able to see the parties face to face, and having been acquainted with them some fourteen or fifteen years, he distinctly recognized them as the three defendants. The main question raised by the defendants is the correctness of the identification by Hornburg, and it is also urged that there was no motive for the assault on the part of these defendants, and that the testimony establishes an *alibi* in their behalf.. Hornburg's testimony is clear and positive that he identified them, not only by their faces, but by their voices as well. The testimony of Hornburg, however, is the only evidence tending to show that these defendants were at the place at the time of the assault or that they were in any way connected with it, except that there was testimony that when Keim was arrested Shober asked him what he was arrested for, and Keim replied, "For licking Hornburg," and that Shober then said, "You ought to have killed the —— —— ——," using a vile name. We think it clear from the evidence that the assault took place in the evening, between 5:30 and 5:40. Both Duffy and Keim testify positively that they were not at the cor-

ner of Thirty-first and Halsted streets at the time of the
alleged assault. Keim was employed on the 13th day
of December at 9376 Ewing avenue, at the shops of the
Hibben & Hill Company, and the evidence of the time-
keeper of that company was to the effect that Keim was
at the shops at half-past four that evening. Keim testifies
that at twenty-five minutes to five that evening, having
quit work about five minutes previous thereto, he left
the shops in company with Shober, a fellow-workman,
and took the street car at Ninety-second street to go
home. Shober's testimony agrees with that of Keim, and
is to the effect that he was on the car with Keim from
twenty-five minutes to five until ten minutes to six that
evening, when Shober left the car at Thirty-first street
and Cottage Grove avenue, about two miles from the
place of the assault. Nathaniel White, a lace merchant
and a disinterested witness, testified that Keim arrived
home in the neighborhood of a quarter of six that even-
ing. Duffy testifies that he was employed at the corner
of Halsted and O'Neil streets,—about ten blocks from the
place of the assault; that he quit work at 4:30 on that
day and immediately took a car, in company with John
Morrison, a fellow-workman, for home; that they pro-
ceeded together on the O'Neil street car until they reached
Fifty-ninth street, where Morrison got off. This was
about thirty-two blocks from the scene of the alterca-
tion. This point was reached at about five or ten minutes
after five o'clock. Duffy is corroborated in his statement
thus far by the testimony of Morrison. Duffy testifies
that he then proceeded on the car to Sixty-third street,
at which point he took a Sixty-third street car to Stony
Island avenue and then proceeded to his home, which he
reached about five minutes to six o'clock that evening.
As to Olson, he was not apprehended and not on trial.

The chief evidence of importance in the record to im-
plicate Keim and Duffy in the assault is the testimony of
Hornburg. In direct contradiction of this testimony both

the defendants, and also Hibben, Shober, White and Morrison, testify that Keim and Duffy were not at the place of the assault at the time it must have occurred. The defendants had been friends of Hornburg for many years, and between them had never arisen a word, discussion or feeling of any character, other than that of friendship and good will. While it is true the evidence seems to show there were labor troubles then existing among the boiler-makers in Chicago, the record also shows that the defendants and Hornburg, though boiler-makers, were not participating therein, and that all were engaged at their trade without interest or connection with the strike then in progress. It also seems, from the evidence, that at the time Hornburg was assaulted, Olson, the other defendant, was in the kingdom of Norway, or at any rate not in the city of Chicago, and hence it was impossible for him to have been one of Hornburg's assailants.

To sustain this conviction we must do so on the unsupported testimony of the complaining witness, against the equally emphatic testimony of the appellants denying that they had anything to do with the assault or that they were even at or near the place at the time it was committed, and against strong corroborating testimony of several reputable witnesses to the effect that the accused could not have been present at the assault. True, the presiding judge, who heard and saw the witnesses testify, had better opportunities than we have to judge of their credibility; but we cannot, on the record before us, sustain the conviction on that ground. We fear that the frame of mind of the learned judge who tried the case without a jury was not as impartial and unbiased as it should have been and that the defendants may have suffered from that cause. Hornburg had testified that at the time of the assault he saw a man standing in a drug store on the corner, and counsel for the defendants asked the witness, "Well, is there any other store about there?" The record then shows the following:

The court: "Why, what do you ask this question for?

Mr. Stafford: "Why, just simply to show your Honor that there were stores around there, with people in them.

The court: "Yes?

Mr. Stafford: "And his statement that there was nobody in the mix-up there, and excitement and assault—

The court: "Yes?

Mr. Stafford: "That those people, none of them that were there, came to his rescue.

The court: "Why, I saw that assault made last Saturday upon those people at the corner of Fifth avenue and Washington street, and I stood there,—there were as many people there as there are in this court room,—and there was not a soul that lifted his fingers when those men were knocked down. I saw it. Where is the improbability about it? I saw that. Now, to talk about the improbability of nobody raising a finger is absurd. Go on.

Mr. Stafford: "It is also improbable that if those people saw it—

The court: "Go on. I will put my personal experience in these matters into the scales here."

The personal experience of the judge in another case was not a proper matter to put in the scales against defendants, and there was danger that innocent men might be convicted under the influence of an honest indignation excited by the personal observation of the judge of another assault made upon peaceable men without any justification. Besides, it was proper to prove on behalf of the accused that the place were the assault was committed was a public one, and that there were other persons, few or many, within hearing and seeing distance at the time, as bearing upon the question whether the defendants did, in fact, commit the assault or not. In support of the motion for a new trial an affidavit was made by one James E. Dixon that he was at or near the place where the assault was committed, and witnessed it, and

that he was acquainted with the defendants, and with Olson, and also with Hornburg, and that the defendants Keim, Duffy and Olson were not the persons who committed the assault.

After a full consideration of the case as disclosed by the record we have reached the conclusion that the case should be remanded for another trial, in which the guilt or innocence of the appellants may be made more clearly manifest.

The judgments of the Appellate and criminal courts will be reversed and the cause remanded to the criminal court for another trial.          *Reversed and remanded.*